IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ZACHERY CURTIS DANIEL                                        PLAINTIFF

v.                        Civil No. 06-5010

CORPORAL TRIMBERGER;
and SHERIFF TIM HELDER                                       DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983.  He proceeds pro

se and in forma pauperis.  Plaintiff maintains his First Amendment right to the free exercise of

religion was denied when he was prohibited from having his Bible while confined to the "padded

cell" at the Washington County Detention Center.

On December 11, 2007, an evidentiary hearing was held.  The court heard the testimony

of the following witnesses:  Marshall Cole; Corporal Thomas Trimberger; Sheriff Tim Helder;

Captain Randy Osburn; and Lt. Lloyd Ellis Muggy, Jr.  At the conclusion of the hearing, the

defendants moved for entry of judgment[1] in their favor.  The court announced its intention of

recommending that judgment be entered in defendants' favor and the plaintiff's case be

dismissed.

---

[1]Defendants referred to their motion as one for directed verdict.  Since December 1, 1991, a motion for directed verdict has been entitled a motion for judgment as a matter of law. *See*  Fed. R. Civ. P. 50 (1991 amendment advisory committee's notes) .  However, Rule 50 only applies to motions made in jury trials.  "A motion to dismiss an action at the end of the plaintiff's case in a non-jury trial, however, is properly entitled a motion for judgment on partial findings." *Williams v. Mueller*, 13 F.3d 1214, 1215 (8th Cir. 1994)(*citing* Fed. R. Civ. P. 41(b)).

AO72A
(Rev. 8/82)

**Background**

Daniel was booked into the Washington County Detention Center (WCDC) on November 11, 2005.  *Defendants' Exhibit* 3.  At issue here is Daniel's stay in what is referred to as the "padded cell" at the WCDC from January 2, 2006, to January 4, 2006.

On January 2nd, Daniel complained that he was feeling very depressed about family issues, his family did not love him, and his Mother had not written him in two months.  *Defts' Ex.* 4.  He stated his situation seemed hopeless.  *Id.*

In response, at 2:00 p.m. Daniel was placed in a padded cell for his safety.  *Resp.* at ¶ 20; *Defts' Ex.* 4.  He was placed on fifteen minute checks.  *Defendants' Exhibit* 6.  He remained in the padded cell until January 4th at 8:45 a.m.  *Id.* at page 3.

On January 3rd, Daniel submitted a grievance stating he had been denied his Bible on last night's shift by Corporal Matthews and today by Corporal Trimberger.  *Defts' Ex.* 5.  He asked if he was allowed to have his Bible in isolation.  *Id.*  He also asked to speak to the chaplain, the nurse, and a sergeant.  *Id.*

In response Daniel was told he was not allowed to have his Bible while in the padded cell.  *Defts' Ex.* 5.  He was told he was only allowed to have the smock he was wearing.  *Id.*  He was told he would be given a request form to speak to the chaplain.  *Id.*

The WCDC policy with respect to inmate religious services is that inmates are permitted to worship or meditate at a reasonable time as prescribed by their faith; have access to clergy of their faith, if available; and adhere to the dietary laws of their faith where possible.  *Plff's Ex.* 1.

The WCDC policy with respect to suicidal detainees is that they shall be confined to a holding cell and placed on a fifteen minute watch.  *Defts' Ex.* 1.  The detainee is to be put in a

-2-

suicide smock and is not to have anything in the cell.  *Id.*  Water is turned off to the cell and the detainee is fed on paper.  *Id.*  The detainee's spoon, cup, and plate are removed immediately after the detainee is done eating.  *Id.*

Corporal Trimberger testified he spoke with Daniel about his request to have a Bible in the padded cell.  Trimberger told Daniel he did not believe he would be allowed to have the Bible because detainees were not allowed to have anything while in the padded cell.

However, Trimberger consulted Sergeant Jeremy Parker about the request.  Trimberger consulted with Parker because the request was for a Bible and Trimberger wanted to make sure he wasn't infringing on someone's rights.  This was the first time someone had asked Trimberger for a Bible in the padded cell.

According to Trimberger, Parker reviewed the request and Daniel's past history at the facility.  Because Daniel was suicidal and in the padded cell, for safety reasons Parker said Daniel should not be allowed to have the Bible.  Trimberger and Parker discussed the fact that detainees could take a Bible and make a weapon out of it.  Lt. Muggy was the supervisor over Parker that day.

Detainees are told they are only supposed to put one question per request form.  Daniel had two questions on his request form.  *Defts. Ex.* 5.  Trimberger testified this is why Daniel was told he would be given a request form to request to speak to the chaplain.  *Id.*

Trimberger testified he had no idea Daniel had a book in the padded cell.  If Daniel had a book, it would have been against the rules.

Trimberger did not see anything in the cell except the smock.  The smocks are a padded outfit about an inch thick that are quilted and warm.  They have velcro fasteners.  There are two

-3-

styles.  One style is a dress and the other style has legs.  The smock looks similar to a vest you put on when you go to a dentist.

The door to the padded cell has a window approximately eighteen inches by four or five inches.  Trimberger stood at this window and looked in it when talking to Daniel.  Trimberger was not attempting to make a visual inspection of the cell.  Trimberger never saw anything in the cell.

When detainees are assigned to the padded cell, they get an hour out.  During the hour out, they can shower, look at the paper, the Bible, use the phone, etc.

Although Trimberger had never heard of a detainee hurting himself with a soft covered Bible, he believed a detainee could hurt himself by shoving pages in his ears, nose, or mouth.  Detainees are placed in the padded cell for their safety and the reason no items are allowed is because they do not want to take the chance.

Sheriff Helder, Captain Randy Osburn, and Lt. Lloyd Ellis Muggy, Jr., all testified that if Daniel had a novel in the cell, it would have been a violation of the rules.  They each testified the rules for the padded cell prohibit detainees from having any items in the cell.  They testified there are no deviations from this rule allowed.  They also indicated that detainees had harmed themselves with paper.

Daniel elected not to testify himself.  He indicated he wasn't thinking about all of this when he filed the lawsuit.  He simply wanted to have his Bible while in the padded cell.

### Discussion

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."  *Turner v. Safley*, 482 U.S. 78, 84, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

-4-

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987). *See also Cruz v. Beto*, 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972).

This right, however, is not without limitation. The Supreme Court has recognized that "incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *O'Lone*, 482 U.S. at 348. "The free exercise right is limited insofar as a prisoner's adherence to religious practices may be regulated by prison authorities, so long as such regulations are' reasonably related to legitimate penological interests.'" *Murphy v. Carroll*, 202 F. Supp. 2d 421, 424 (D. Md. 2002)*(quoting Turner*, 482 U.S. at 89; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-349, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987); *Cruz*, 405 U.S. at 322). *See also Thomas v. Gunter*, 32 F.3d 1258, 1259-60 (8th Cir. 1994).

In analyzing a First Amendment free exercise claim, the court first addresses the "threshold issue of whether the challenged governmental action 'infringes upon a sincerely held religious belief,' and then appl[ies] the *Turner* factors to determine if the regulation restricting the religious practice is 'reasonably related to legitimate penological objectives.'" *Murphy v. Missouri Department of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004). "Prison regulations that infringe on the constitutional rights of prisoners are judged by their reasonableness. Prison officials are not required to choose the least restrictive means possible in furthering administrative interests." *Salaam v. Lockhart*, 905 F.2d 1168, 1171 (8th Cir. 1990).

In *Turner v. Safely*, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), the Court set forth a reasonableness test consisting of four factors used to balance an inmate's free

exercise right and the prison's legitimate correctional goals and security concerns.  Specifically, the court considers:  (1) whether there exists a rational connection between the prison policy or regulation and a legitimate governmental interest advanced as its justification; (2) whether there are alternative means of exercising the right notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether there are ready, easy-to-implement alternatives that would accommodate the prisoner's rights.  *Turner*, 482 U.S. at 89-91.

In this case, Daniel's claim is based on his confinement to a padded cell from January 2, 2006, at 2:00 p.m. until January 4, 2006, at 8:45 a.m.  *Defts' Ex.* 6.  He was placed in this cell on fifteen minute checks after he complained of feeling depressed.  *Defts' Ex.* 4.  Daniel indicated he believed his situation was hopeless.  *Id.*

During the time he was confined to the padded cell, Daniel was prohibited from possessing his Bible.  The WCDC policy prohibited the possession of any personal property by detainees confined to the padded cell.  *Defts' Ex.* 1.  The testimony of the witnesses was undisputed that this policy was based on a prior history of detainees injuring themselves with paper.  The policy was designed to ensure the safety of the detainees.

The testimony was also undisputed that if Daniel did somehow have a novel or other papers in the padded cell neither Trimberger or Helder were aware of this fact and it was a violation of the defendants' policy.  The undisputed testimony was no deviations from the policy were made.

-6-

When in the padded cell, Daniel was able to worship and pray. When he was released for his hour out from the padded cell, he could read his Bible.  When he was returned to his regular cell, he could once again have his Bible.

### Conclusion

A noted at the conclusion of the evidentiary hearing, for the reasons stated, I believe defendants have advanced legitimate reasons for their policy and recommend that the defendants' be granted judgment in their favor.  I further recommend that plaintiff's complaint be dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of December 2007.


/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)